<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
**AGUEDA MEDEROS,**                         :
                                            :
        **Plaintiff,**        :
  v.                                    :   Civil Action No. 14-3800 (ES)
                                            :
**CAROLYN W. COLVIN,**                      :   OPINION
**Acting Commissioner of Social Security,** :
                                            :
        **Defendant.**        :
_____:

**SALAS, DISTRICT JUDGE**

Agueda Mederos ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). This matter has been decided upon the written submissions of the parties, as well as the administrative record, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**I.    BACKGROUND**

On June 21, 2011, Plaintiff filed an application for SSI and DIB alleging disability beginning April 1, 2009 relating to asthma, diabetes, high blood pressure, and schizoaffective disorder. (D.E. No. 6, Administrative Record ("Tr.") 17, 182-93). Plaintiff worked as a home health aide from 2000 to 2006, and as a janitor from 2006 to 2009, but has not worked since the alleged onset of her disability. (Tr. 215).

Plaintiff's application was initially denied on August 24, 2011, and again upon reconsideration on March 29, 2012. (Tr. 122-28). Plaintiff requested a hearing and she appeared before ALJ Hilton R. Miller on October 25, 2012. (Tr. 28). On December 5, 2012, the ALJ issued an opinion denying Plaintiff's SSI and DIB application. (Tr. 15-23).

Particularly relevant to this opinion is step four of ALJ Miller's decision. Prior to proceeding to step four, ALJ Miller determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work. (Tr. 19). The ALJ indicated that Plaintiff "must avoid concentrated exposure to fumes, dusts, [odors], gases, poor ventilation, and other respiratory irritants" and that she "is limited to simple, routine, and repetitive tasks. Specifically, "specific vocational preparation" ("SVP") 1, 2, and 3 jobs, which consists of making simple decisions, only occasional changes in routine, and no fast-paced production quotas." (Tr. at 19). At step four, ALJ Miller found Plaintiff "capable of performing [her] past relevant work as a janitor and home health aide" because her prior "work-related activities [are not] precluded by [her] residual functional capacity." (Tr. 22). In making this determination, ALJ Miller relied on the Dictionary of Occupational Titles ("DOT"), considered the vocational expert's ("VE") testimony at the administrative hearing assessing Plaintiff's capacity "to perform the requirements of her past relevant work," and compared Plaintiff's RFC "with the physical and mental demands" of Plaintiff's past relevant work. (Tr. 22). Thus, the ALJ stopped his analysis at step four and concluded that Plaintiff was not disabled. (Tr. 22).

Plaintiff requested a review from the Appeals Council, which was denied, (Tr. 1), and she timely commenced this action on June 13, 2014. (D.E. No. 1, Complaint ("Compl.")). Plaintiff filed a brief in accordance with Local Civil Rule 9.1, (D.E. No. 7, Brief in Support of Plaintiff ("Pl. Mov. Br.")), the Commissioner filed an opposition, (D.E. No. 8, Defendant's Brief ("Def.

Opp. Br.")), and Plaintiff filed a reply, (D.E. No. 9, Letter ("Pl. Reply Br.")). The matter is now ripe for adjudication.

## II.     LEGAL STANDARD

   *A.     Standard for Awarding Benefits*

To be eligible for DIB or SSI under Titles II and XVI of the Social Security Act ("the Act"), respectively, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). Additionally, claimants seeking DIB must satisfy the insured status requirements set forth in § 423(c), while those seeking SSI must fall within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under both titles if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a) (regarding DIB); § 1382c(a)(3)(A) (regarding SSI). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(a); § 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
> 
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

>(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
>
>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
>(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4) (DIB), 416.920(a)(4) (SSI). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.*

Proper procedure also requires that the Commissioner determine the individual's residual functioning capacity ("RFC") before proceeding to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as the most the individual is capable of doing despite her limitations, including those that are not severe, and it is based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2). In comparing the RFC to past relevant work, a plaintiff has past relevant work if such work was substantial gainful activity performed within the past fifteen years. *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Substantial gainful activities consist of performing significant mental or physical activities, including part-time work, that is of economic value, useful in accomplishing a job, and is "done for pay or profit." *Id.* §§ 404.1572, 416.972; SSR 83-33, 1983 WL 31255, at *1. A plaintiff's past work is presumed to be substantial gainful activity if she earned "substantial earnings," or earned above a designated monthly or annual income threshold. 20 C.F.R. § 404.1574(a)-(b). Consideration of a plaintiff's monthly or annual

4

work earnings is the primary consideration in evaluating whether a plaintiff's past work was substantial gainful activity (SGA). *Id.*; *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1092 (M.D. Pa. 2013) (interpreting the regulations to *mandate* that an "individual's earnings . . . rise to *at least* a minimum [monthly or annual income] level set by . . . the Social Security Administration" to constitute substantial gainful activity) (emphasis added) (citing Program Operation Manual System, section DI 01501.015, Table 2 - Non-blind individuals (hereinafter "POMS, DI 01501.015, Table 2")).

      B.     *Burden of Proof*

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of proof for the first four steps of the analysis. *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The burden then shifts to the Commissioner for the fifth step. *Id.*; *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step) (internal quotation marks omitted). If the Commissioner cannot meet this burden, then the claimant is deemed disabled and shall receive the benefits sought. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

      C.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is bound by the ALJ's factual findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Accordingly, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

## III. DISCUSSION

Plaintiff argues that substantial evidence exists in the administrative record to establish Plaintiff's eligibly for DIB and SSI, and that ALJ Miller erred in concluding otherwise. Specifically, Plaintiff argues that (1) the RFC determined by ALJ Miller is not supported by substantial evidence; and (2) that the RFC nevertheless precludes her from performing her past relevant work. (Pl. Mov. Br. at 9-10). For the reasons stated below, the Court rejects Plaintiff's contentions.

### A. *Plaintiff's RFC Is Supported by Substantial Evidence*

Plaintiff contends that ALJ Miller's RFC evaluation lacked adequate explanation and was not properly supported by the record. In particular she argues that ALJ Miller failed to mention all of Plaintiff's symptoms, improperly rejected Plaintiff's testimony and overall credibility, and is bound by Plaintiff's treating physicians' opinions that Plaintiff cannot work. (*See* Pl. Mov. Br. at 10-20).

RFC is an administrative, non-medical assessment of a plaintiff's maximum ability to perform certain sustained work activity despite her impairments. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ must consider the following: first, all symptoms "which . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence," and second, how a plaintiff's symptoms affect her capacity to work. 20

6

C.F.R. § 404.1529. Relevant evidence the ALJ must consider "includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001). However, every detail of a plaintiff's medical history or her every alleged symptom need not be mentioned in the ALJ's opinion to permit "meaningful review." *See Wilkinson v. Colvin*, No. 12-6180, 2014 WL 1316056, at *8 (D.N.J. Apr. 1, 2014) (citation omitted). Furthermore, "the ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review." *Rivera v. Commissioner*, 164 F. App'x 260, 262-63 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505).

In accordance with the "treating physician doctrine," the ALJ must afford controlling or binding weight to a plaintiff's treating physicians' medical opinions when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [the opinions are] not inconsistent with . . . other substantial evidence." *Griffies v. Astrue*, 855 F. Supp. 2d 257, 270 (D. Del. 2012) (quoting *Fargnoli*, 247 F.3d at 43). The ALJ may also consider the medical opinions of non-treating physicians, physicians who only treated a plaintiff once, and other appropriate medical sources, but the ALJ's findings are never bound by such opinions. 20 C.F.R. § 404.1527(d)-(e); *see Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). When contradictory opinions exist, the ALJ must properly explain why he accepts or rejects certain opinions. *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Significantly, the ALJ is never bound by, or required to give "special significance" to, any physician's opinion that a plaintiff is disabled or cannot work, as this is an adjudicatory decision reserved exclusively for the ALJ. *See* 20 C.F.R. § 404.1527(d)-(e).

Finally, courts defer to the ALJ's credibility determinations regarding individuals' statements or testimonies, provided that "specific reasons [are given] for the finding on credibility, supported by the evidence in the case record." *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see also Williams v. Barnhart*, 211 F. App'x 101, 104 (3d Cir. 2006); *see also Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination").

Here, ALJ Miller's decision is supported by substantial evidence. ALJ Miller considered all of Plaintiff's symptoms as "can reasonably be accepted as consistent" with all the evidence. *See* 20 C.F.R. § 404.1529. This encompassed her subjective reported symptoms of uncontrolled diabetes and other symptoms that included blurred vision, depression, concentration and memory problems, and shortness of breath. (Tr. 19-22). ALJ Miller also considered Plaintiff's reported leg pain, difficulty walking and standing, anxiety, fear of being around others, high blood pressure, difficulty with stairs, and an inability to do heavy lifting. (Tr. 20, 244-49). In making his findings, ALJ Miller adequately explained how or why he weighed, accepted, or rejected certain probative or relevant evidence so as to permit meaningful review. *See Cotter v. Harris*, 642 F.2d 700, 704-06 (3d Cir. 1981) (noting that the ALJ must adequately explain the evidence considered in support of the decision as well as some indication of evidence which was rejected). ALJ Miller assessed Plaintiff's treatment records and treatment compliance, her subjective complaints, medication use, the effectiveness of Plaintiff's treatment modalities, medical opinions that included assessments of Plaintiff's physical and mental capacities, and other evidence. (Tr. 19-22). Contrary to Plaintiff's contentions, ALJ Miller considered Plaintiff's hypertension, asthmatic restrictions, and depression, whether by explicitly addressing them in the Opinion or by referencing the appropriate record evidence. (*Id.*). Furthermore, although ALJ Miller did not explicitly discuss Plaintiff's

8

high hemoglobin A1C levels, he reviewed the record evidence regarding the general symptoms and limitations of Plaintiff's diabetes. (*Id.*).

ALJ Miller adequately assessed Plaintiff's credibility based on the entire record, including medical evidence, statements by Plaintiff and third parties regarding her impairments and their functional effects, and all other relevant evidence. (*Id.*). Specifically, ALJ Miller discussed inconsistencies between Plaintiff's reported symptoms at the October 2012 administrative hearing and her description of her symptoms at various doctor visits—symptoms which were also directly contradicted by multiple contemporaneous medical examinations and third-party observation results. (*Id.*). For example, Plaintiff reported that her diabetes was uncontrolled. (Tr. 244). However, the ALJ assessed that Plaintiff's treating physicians consistently found her glucose level within normal range, no decreased sensation or swelling in her extremities, and thus, that her diabetes was largely controlled in the two years leading up to Plaintiff's testimony. (*See* Tr. 20-22 (citing to Tr. 421-72, 489, 493, 497)). Furthermore, the intermittent occasions where Plaintiff's glucose fell out of range and her diabetes constituted an uncontrolled state were regularly due to Plaintiff's non-compliance with her required medications and other treatment. (*See id.* (citing to Tr. 320-21, 469, 472, 484-510)).

Also, many of Plaintiff's reported symptoms are also not credible because they are inconsistent with the evidence, particularly regarding "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms." (Tr. 22). From December 2010 through May 2012 (which includes the period in which Plaintiff alleged disability), when Plaintiff complied with her medications and treatment, her glucose level and blood pressure were controlled and within normal range. (Tr. 484-510). This fact casts serious doubt on symptoms of "uncontrolled" diabetes with "the [particular] intensity, persistence, and limiting effects" reported by Plaintiff. *See* 20 C.F.R.

9

§§ 404.1529(c), 416.929(c); (*see* Tr. 484-510). Plaintiff even previously admitted that she felt "fine" and had "no complaints" when she took her medications. (Tr. 300-16). Plaintiff's contemporaneous multiple medical examinations regularly revealed no decreased sensation in her extremities, no edema, and that Plaintiff had both deep symmetrical peripheral pulses and deep tendon reflexes. (Tr. 467, 489, 493, 497).

Nothing suggests that ALJ Miller misinterpreted Plaintiff's testimony, and that ALJ Miller wrongly rejected her entire testimony and credibility because of an answer Plaintiff gave at the hearing regarding her diabetes. (Pl. Mov. Br. at 20-21). ALJ Miller did not indicate in his opinion that he outright rejected Plaintiff's testimony or that he based his judgment of her credibility principally on Plaintiff's answer. (Tr. 22). At the hearing, ALJ Miller asked Plaintiff "what [her glucose] was yesterday or today." (Tr. 37). Plaintiff responded that her glucose reached "400." (Tr. 37). ALJ Miller's opinion simply noted that Plaintiff's averred level of 400 the day before the hearing "[was] not supported by her [past] treatment records," which is factually true. (Tr. 22, 448) (noting that Plaintiff's highest ever recorded glucose was 248). ALJ Miller's opinion suggests that he found Plaintiff's overall credibility dubious because her testimony was largely inconsistent with the objective medical findings and opinions from multiple qualified sources, along with the other relevant evidence.[3] *Williams v. Barnhart,* 211 F. App'x at 104 (finding that the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record"); (Tr. 19-22). Furthermore, courts "defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor." *Reefer,* 326

---

[3] Plaintiff's credibility is further suspect, given her three starkly contrasting explanations for leaving her last job as a janitor in 2009. She alleged that she stopped working due to disability, but nonetheless she told one source that she was laid off because of cutbacks at her company, (Tr. 33-34, 203), and she told another source that she stopped working to care for her nephew, (Tr. 329).

F.3d at 380. Hence, the Court finds that ALJ Miller did not commit error regarding Plaintiff's credibility.

The ALJ properly considered the medical evidence. Plaintiff's treating physician from at least July 2009 through November 2009, Dr. Soto-Perello, contradicted Plaintiff's reported symptoms and concluded that Plaintiff was medically stable. (Tr. 300-16). His examinations revealed that Plaintiff's behavior and eye contact were normal, she spoke coherently, and she had no hallucinations or delusions. (*Id.*). Plaintiff did not exhibit cognitive problems, her recent memory and concentration were intact, and her judgment and insight were "good." (*Id.*). In fact, Plaintiff told Dr. Soto-Perello that she was "fine," had "no complaints," and her anxiety and mood symptoms were "much better" when she complied with her medications. (*Id.*).

In June 2011, Social Security claims representative J. Vasquez observed that Plaintiff appeared depressed, but had no limitations. (Tr. 212-14). Vasquez observed that Plaintiff was normally groomed, coherent, and exhibited no problems in her ability to read, breathe, understand, concentrate, talk, answer, sit, stand, walk, see, use hands, or write. (*Id.*). Plaintiff reported that she went out around people on a weekly basis, followed simple instructions "good," and could walk for extended periods but needed breaks. (Tr. 227-29). In addition, in July 2011 and March 2012, state doctors Starace and Tan opined that Plaintiff had moderate restriction in daily living activities, moderate difficulties in social functioning, and moderate difficulties in maintaining pace, persistence, or concentration. (Tr. 74-82, 85-95, 96-120). Nonetheless, the doctors also found that Plaintiff could follow instructions and "maintain adequate [concentration, persistence, . . . pace, and] social interaction in a work environment." (*Id.*).

Although in August 2012 Plaintiff was diagnosed by her treating physician, Dr. Iskandarani, with severe depression and a schizoaffective disorder, (Tr. 482-83, 513-14), Plaintiff

11

had not complied with any required treatment in the preceding five months. (*See* Tr. 469, 472, 493-95). Just two months later, by October 2012, now that Plaintiff was undergoing treatment and taking psychotropic medications, Dr. Iskandarani concluded that Plaintiff was alert and oriented to her surroundings, her insight and judgment were normal, and she had a GAF score of 65, indicating only "mild symptoms, or some difficulty in social [or] occupational . . . functioning, but generally functioning pretty well and having some meaningful interpersonal relationships." (Tr. 21; *see also* 515-17).

Furthermore, even though Advanced Practice Nurse Georgiana Hart provided somewhat contradictory opinions in September 2012 regarding Plaintiff's overall condition, symptoms, and limitations, APNC Hart was a non-treating physician whose one-time evaluation of Plaintiff was properly afforded less weight by ALJ Miller. (Tr. 21, 511-12). Moreover, Mrs. Hart's opinion that Plaintiff had limited memory, and limited ability to bend, lift, stand, climb, and use her hands was unsupported by treatment records and laboratory or clinical diagnostic techniques. *See Griffies*, 855 F. Supp. 2d at 270; (Tr. 21, 511-12). Accordingly, ALJ Miller was within his discretion to instead rely on substantial contemporaneous and contradictory evidence from Plaintiff's actual treating physician, Dr. Iskandarani. (Tr. 511-12, 21, 515-17). Thus, ALJ Miller appropriately considered all of Plaintiff's symptoms "which . . . can reasonably be accepted as consistent with the . . . evidence." *See* 20 C.F.R. § 404.1529.

Next, regarding the effects of Plaintiff's symptoms on her work capacity, ALJ Miller's findings were supported by substantial evidence. Consistent with the evidence, ALJ Miller explained how Plaintiff can perform medium work, specifically SVP I, II, and III jobs constituting simple, routine, and repetitive tasks. (Tr. 19-22). His explanation was founded on Plaintiff's mild GAF score and the fact that when Plaintiff complied with treatment, her diabetes was regularly

controlled, her mental health was stable, and she lacked much of her related impairing symptoms. (*See* Tr. 19-22). Medical opinions and observations by treating physicians, non-treating physicians, and others consistently observed that Plaintiff's motor ability, concentration, insight, judgment, and ability to follow directions were normal, and that according to State Doctors Tan and Starace, she could maintain adequate concentration, social interaction, pace, and persistence in a work setting. (Tr. 19-22). Furthermore, Plaintiff admitted that she could follow simple instructions (instructions not requiring multiple steps) "good." (Tr. 229).

Although ALJ Miller explained how Plaintiff's asthma requires her to avoid concentrated exposure to environmental irritants, he did not, however, outright preclude Plaintiff's exposure to such irritants because substantial evidence supported her ability to perform medium work or SVP I, II, and III jobs despite her impairments. (Tr. 19-22). Her impairments limit her to simple, routine, and repetitive tasks, and limit her to simple decisions, only occasional changes in routine, and no fast-paced production quotas, as is consistent with the objective medical and observational evidence, including Plaintiff's GAF score. (*Id.*). Furthermore, ALJ Miller extensively addressed Plaintiff's additional work limitations caused by her impairments, including Plaintiff's restriction of only "occasionally climb[ing] ramps or stairs; no ladders . . . occasional[] balanc[ing,] . . . kneel[ing,] . . . crouch[ing,]" no hazardous machinery, and more. (Tr. 19). Thus, ALJ Miller properly evaluated and explained how Plaintiff's symptoms affect her work capacity. 20 C.F.R. § 404.1529.

With respect to Plaintiff's treating physicians' opinions that Plaintiff cannot work, the ALJ is not bound by such opinions because they directly conflict with the ALJ's exclusive adjudicatory authority to determine whether Plaintiff is disabled and if she can return to her past work. 20 C.F.R. § 404.1527(d)-(e). In any event, the physicians' opinions that Plaintiff could not work

13

were inconsistent with their own medical findings.  (Tr. 21, 300-16, 482-83, 513-17).  For example, as ALJ Miller explained, Dr. Iskandarani's opinion that Plaintiff could not work was inconsistent with Plaintiff's "normal mental status examinations; her GAF score, which reflects only mild symptoms; and the fact that with medication" Plaintiff's symptoms were controlled.  (Tr. 21).  In addition, it was also within ALJ Miller's discretion to consider the State Doctors' medical findings, yet still reject their opinions regarding Plaintiff's inability to work.  *See* 20 C.F.R.  § 404.1527(d)-(e).  Thus, ALJ Miller did not err in rejecting the physicians' opinions regarding Plaintiff's capacity to resume past work.

In sum, the Court concludes that the ALJ's RFC determination is supported by substantial evidence and is otherwise proper.

> B. *Step Four: Substantial Evidence Supports the ALJ's Finding that Plaintiff Can Do Her Past Relevant Work*

Regarding Plaintiff's past janitorial work, Plaintiff argues that this work cannot be considered past relevant work because it was not "substantial gainful activity," since her annual earnings as a janitor fell below the required minimum income threshold.  (Pl. Mov. Br. at 11-12; Pl. Reply Br. at 2).   Additionally, regarding Plaintiff's past home health aide work, Plaintiff does not dispute that it constitutes past relevant work, but she contends that ALJ Miller improperly categorized this work as medium work requiring only "simple, routine, and repetitive tasks," and that ALJ Miller confused semi-skilled SVP III work, like that of a home health aide, with unskilled work.  (Pl. Mov. Br. at 11-12).  Plaintiff avers that a home health aide position and other semi-skilled jobs can never consist only of simple, routine, and repetitive tasks.  (*Id.* at 13; Pl. Reply Br. at 3).  Plaintiff also argues that a material difference exists between simple, routine, and repetitive tasks involving widgets, and tasks involving human care, the latter of which Plaintiff's impairments disqualify her from doing.  (Pl. Mov. Br. at 12-13).

14

Furthermore, Plaintiff argues that for both her janitor and home health aide jobs, ALJ Miller failed to abide by the step four requirement that he provide "an [adequate] task-by-task, function-by-function comparison between the duties of [Plaintiff's] past work and [her] RFC" before determining Plaintiff's eligibility for returning to past work. (*Id.* at 13, 23). Plaintiff also argues that ALJ Miller did not adequately explain how Plaintiff can do her past work despite her exertional and non-exertional impairments and other symptoms and why he rejected or accepted certain evidence. (*Id.* at 13-18; Pl. Reply Br. at 3). In addition, Plaintiff claims ALJ Miller improperly rejected the expert medical opinions that Plaintiff cannot return to her past work. (Pl. Mov. Br. at 18-20; Pl. Reply Br. at 3).

The "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 110 (3d Cir. 2006). However, a harmless error, or an error that does not change or determine the case's outcome, does not warrant remand or reversal. *See Rechenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010) (citing *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989)).

As noted in Part II.A, *supra*, a plaintiff is not disabled at step four if she "retains the capacity to perform the functional demands and job duties of [her past relevant work] as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982); *Rodriguez v. Comm'r of Soc. Sec.*, No. 13-04006, 2014 WL 3783870, at *5 (D.N.J. July 31, 2014). In determining a plaintiff's ability to perform her past relevant work, the ALJ may rely on the DOT or vocational experts, including the VE's opinion testimonies to hypothetical questions considering the plaintiff's work abilities despite her impairments. 20 C.F.R. § 416.960(b)(2).

"[A]n ALJ considers the [plaintiff's] description of the requirements of her former work, what requirements she can no longer meet, [and] the medical evidence establishing how her impairment[s] limit[] her ability to meet those requirements . . . ." *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 264 (3d Cir. 2006) (citing *Burnett*, 220 F.3d at 123). "However, the ALJ need not discuss 'every tidbit of [record] evidence' . . . to satisfy the reviewing court that [he] arrived at a decision through . . . complete review of the relevant factual record." *Robinson v. Comm'r of Soc. Sec.*, No. 13-5178, 2015 WL 1384376, at *7 (D.N.J. Mar. 25, 2015) (citation omitted); *see Rivera*, 164 F. App'x at 262-63 ("[T]he ALJ is not required to use any specific format or language in his analysis . . . .").

Here, the Court agrees with Defendant—substantial evidence supports Plaintiff's ability to perform her past relevant work as a home health aide.[5]

In determining that Plaintiff can perform the demands and duties of a home health aide "as ordinarily required by employers," ALJ Miller properly relied on VE testimony and the DOT. *See* SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982); 20 C.F.R. § 416.960(b)(2). The VE properly considered Plaintiff's adequately supported functional limitations and impairments, and her overall RFC findings, and compared them to the job functions and duties of a home health aide. *See Rivera*, 164 F. App'x at 264; (Tr. 22, 43-46, 49-53). The VE's finding that Plaintiff could perform the duties of a home health aide despite her impairments was consistent with Plaintiff's mild GAF score and other medical evidence, and with the DOT's description of the job functions

---

[5] The Court agrees with Plaintiff's claim that ALJ Miller failed to provide substantial evidence that Plaintiff's past janitor work constituted past relevant work that she could perform. (Pl. Supp. Br. 11-12; Pl. Reply Br. at 2). ALJ Miller found that Plaintiff's janitorial work was past relevant work without addressing direct contradictory evidence that Plaintiff's earnings fell below the monthly or annual earnings threshold to constitute SGA. *See* POMS, DI 01501.015, Table 2; *Landeta*, 191 F. App'x at 110; (Pl. Supp. Br. 11-12; Tr. 194-201). Nonetheless, ALJ Miller's failure to show that Plaintiff's janitor work constituted past relevant work was harmless error because Plaintiff can still perform her other past relevant work as a home health aide. *See Rechenski*, 622 F.3d at 341.

and duties of home health aides. *See Rivera*, 164 F. App'x at 264. Moreover, Plaintiff's own description of her past home health aide work closely mirrors the duties described in the DOT. DOT Code 354.377-014; (Tr. 216). As an additional matter, ALJ Miller's findings at step four were not constrained by physician opinions that Plaintiff could not perform her past work. *See* 20 C.F.R. § 404.1527(d)-(e).

Furthermore, ALJ Miller was not required to extensively explain or spell out his analysis or reasoning behind his findings at step four with particular language or formatting. *See Rivera*, 164 F. App'x at 262-63. It is sufficient that ALJ Miller clearly indicated the evidentiary basis for his factual findings in his Opinion so that this Court could meaningfully review the evidence he considered in his analysis. *See id.* Specifically, ALJ Miller references the DOT, Plaintiff's RFC, the VE's testimony, and the job demands of her home health aide work. (Tr. 22).

The Court also rejects Plaintiff's argument that home health aide work does not constitute medium work requiring "only simple, routine, and repetitive tasks." (*See* Pl. Reply Br. at 3). The DOT specifically indicates that such work requires medium strength or work and is an SVP III job, which the VE confirmed. DOT Code 354.377-014. Moreover, Plaintiff offers no contradictory evidence or case law to support her allegation that simple, routine, and repetitive tasks, including those performed by home health aides, cannot involve human care.

### IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*_____
**Esther Salas, U.S.D.J.**